UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

UNITED STATES OF AMERICA,          )
                                   )
          Plaintiff,               )
                                   )          No. 6:11-CR-17-GFVT
v.                                 )
                                   )          RECOMMENDED DISPOSITION
ORVILLE DEAN BELCHER and JOHN      )
JOSEPH KUZNICKI,                   )
                                   )
          Defendants.              )
                                   )

                    ***  ***  ***  ***

     Shortly after Defendants Orville Dean Belcher and John Joseph Kuznicki drove

into Clay County, Kentucky, on January 31, 2011, the vehicle they were driving was

stopped and searched by Deputy Raleigh Benge, a member of the Clay County Sheriff's

Office.  Arguing that Deputy Benge did not have a valid justification under the Fourth

Amendment to stop their vehicle, Defendants have moved to suppress statements they

made to law enforcement officers following the stop and all evidence seized during the

search of the vehicle as "fruits" of the unlawful stop.  (D.E. 23, 24).  On April 14, 2011,

the Court conducted an evidentiary hearing on Defendants' motions and allowed for

supplemental briefing. (D.E. 30), which was completed on May 2, 2011 (D.E. 36).  As

described below, having evaluated the evidence, reviewed the briefs, and considered the

arguments made by counsel, the Court **RECOMMENDS** that the District Court **DENY**

Defendants' motions to suppress.

# I. BACKGROUND

Since mid-2010, DEA Task Force Officer (TFO) Richard Dalrymple has been investigating a drug trafficking organization that is suspected of transporting large amounts of oxycodone from Florida into southeast Kentucky. (D.E. 32 at 14:9-25). TFO Dalrymple learned from a confidential source that Orville Dean Belcher would be bringing a quantity of oxycodone to the confidential source on the morning of January 31, 2011, as Belcher had done on a monthly basis since August 2010. (*Id.* at 15:8-16:20). Intending to arrest Belcher before he arrived at the confidential source's residence on January 31, TFO Dalrymple requested that uniformed law enforcement officers position their vehicles along Highway 66 in Clay County which, according to the confidential source, was Belcher's most likely route of travel from the Pineville area of Kentucky into Clay County. (*Id.* at 17:2-9).

TFO Dalrymple received assistance from members of the Clay County Sheriff's Office, including Sheriff Kevin Johnson and Deputy Benge. As requested, Deputy Benge positioned his vehicle along Highway 66 in an effort to locate Belcher. (*Id.* at 28:6-13). Deputy Benge was advised of the approximate time that Belcher would be traveling along Highway 66, that Belcher would be driving a Lincoln Town Car with an out-of-state license plate, that the vehicle would be occupied by two subjects, and that Belcher would be heavily tattooed. (*Id.*). During the early-morning hours of January 31, Deputy Benge observed a vehicle traveling on Highway 66 that matched the description of Belcher's vehicle. (*Id.* at 30:9-25). It was occupied by a driver and a passenger and the passenger appeared to have tattoos on his face. (*Id.*). The vehicle passed Deputy

Benge's location at the precise time Deputy Benge was told it would drive by. (*Id.* at 31:1-3).

As the vehicle passed by, Deputy Benge pulled in behind it. (*Id.* at 31:17-22). He observed that the vehicle was equipped with a temporary license plate made of bendable material. (*Id.* at 31:4-16). The top of the temporary plate was affixed to the rear of the vehicle by two screws. (*Id.*). According to Deputy Benge, duct tape had been used to affix the sides of the plate to the rear of the vehicle. (*Id.*). However, Deputy Benge testified that the duct tape had come loose and caused the plate to flap from the screws. (*Id.*). Because the plate was flapping, Deputy Benge could not read the numbers and, therefore, believed the plate was obscured. (*Id.*). The plate stopped flapping and Deputy Benge could read the plate, but not until after he activated his blue emergency lights and the subject vehicle started slowing. (*Id.*). Sheriff Johnson approached the vehicle and spoke with John Joseph Kuznicki, the driver. (*Id.* at 32:22-33:20). Deputy Benge approached the vehicle and spoke with Belcher, the passenger. (*Id.*). Deputy Benge asked Belcher to step out of the vehicle and asked Belcher if he would consent to a search of the vehicle. (*Id.*). According to Deputy Benge, Belcher provided full consent to search the car. (*Id.*).

In their motions to suppress, Defendants' sole argument is that all statements they made to, and all evidence seized by, law enforcement officers on January 31, 2011, are fruits of an unlawful stop. (D.E. 34 at 4). Therefore, the sole question before the Court is whether Officer Benge was justified under the Fourth Amendment to stop, without a warrant, the vehicle Defendants were driving.

## II. DISCUSSION

The Fourth Amendment provides that the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated . . . ." U.S. Const. amend IV. "A warrantless search or seizure is *per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions." *United States v. Pearce*, 531 F.3d 374, 379-80 (6th Cir. 2008) (quoting *United States v. Roark*, 36 F.3d 14, 17 (6th Cir. 1994)). Furthermore, it is well established that "stopping an automobile and detaining its occupants"—like what happened here—"constitute a 'seizure' within the meaning of [the Fourth and Fourteenth] Amendments . . . ." *United States v. Hill*, 195 F.3d 258, 263 (6th Cir. 1999) (quoting *Delaware v. Prouse*, 440 U.S. 648, 653 (1979)) (brackets in original). Where the Government relies upon an exception to the warrant requirement to justify a search or seizure, it bears the burden to establish the applicability of that exception. *United States v. Kinney*, 638 F.2d 941, 943 n.1 (6th Cir. 1981) ("the burden to show the existence of an exception to the requirements for a warrant rests with the Government.") (citing *Vale v. Louisiana*, 399 U.S. 30 (1970)).

The Government relies upon two exceptions to the warrant requirement to justify the warrantless seizure of Defendants' vehicle. First, the Government argues that the stop was justified by probable cause to believe that the driver of the vehicle had committed a civil infraction. (D.E. 36 at 3-4). Second, the Government argues that the stop was justified by reasonable suspicion of ongoing criminal activity. (*Id.* at 4-7).

Because the Court agrees with the first argument—that there was probable cause to conduct a stop of the vehicle—it does not reach the merits of the second argument.

## A. Deputy Benge had Probable Cause to Stop Vehicle

Law enforcement officers may stop a vehicle without a warrant "when they have probable cause to believe a civil traffic violation has occurred . . . ." *United States v. Sanford*, 476 F.3d 391, 394 (6th Cir. 2007). Under Kentucky law, license "[p]lates shall be kept legible at all times . . . ." KRS 186.170. Kentucky courts have held that a license plate that is "obscured by mud" is not legible. *Shields v. Commonwealth*, No. 2005-CA-002300-MR, 2007 WL 866464, at *2 (Ky. Ct. App. Mar. 23, 2007). Likewise, it is a violation of KRS 186.170 to display a license plate in a manner that causes the license plate number to not be visible. *See Jackson v. Commonwealth*, No. 2008-CA-002262-MR, 2009 WL 2569208, at *1 (Ky. Ct. App. Aug. 21, 2009) (license plate was displayed in rear window, "but it was so placed that the number was not visible."). The failure to comply with KRS 186.170 constitutes a "civil traffic violation" under Kentucky law. *See* KRS 186.990(1) ("Any person who violates . . . 186.170 . . . shall be guilty of a violation.").

Here, Deputy Benge was permitted to stop the vehicle Defendants were driving because he had probable cause to believe that Defendants violated KRS 186.170. "The requirements of probable cause are satisfied where the facts and circumstances within [the officers'] knowledge and of which they had reasonably trustworthy information are sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed." *United States v. Davis*, 430 F.3d 345, 352 (6th

Cir. 2005) (quotation and internal markings omitted). According to Deputy Benge's testimony, he personally observed the condition of the license plate affixed to the rear of the vehicle as it was driving at highway speeds along Highway 66. He testified that duct tape along the sides of the plate came loose causing the plate to flap such that the numbers on the plate were not visible. As displaying a license plate in a way that causes the numbers to be obscured constitutes a civil traffic violation under Kentucky law, *see Jackson*, 2009 WL 2569208, at *1, Deputy Benge's testimony establishes that Defendants violated Kentucky law. The Court finds Deputy Benge's unrebutted testimony both credible and believable.

### B. Photographic Evidence does not Undermine Deputy Benge's Testimony

Defendants argue that Deputy Benge's testimony is called into question by photographic evidence showing the condition of the license plate at the time Defendants' vehicle was removed from impound. (Kuznicki's Ex. 1-2). According to Deputy Benge, at the time of the stop, it appeared that duct tape along the sides of the plate had come loose, but he stated that there was "nothing at the bottom of the plate." (D.E. 32 at 34:19-35:3). However, the photographs show a strip of duct tape along the bottom edge of the plate. (Kuznicki's Ex. 1-2). Based upon a stipulation by the Government, the photographs were taken by Mr. Hibbard, counsel for Kuznicki, immediately after the vehicle was removed from impound and before anyone would have had the ability to tamper with the license plate. (D.E. 32 at 45:23-46:25). Furthermore, Deputy Benge testified that after the traffic stop, Defendants' vehicle was immediately transported to impound by Sheriff Johnson. (*Id.* at 41:17-42:8). The inference that Defendants would

like the Court to draw from these photographs is that the duct tape on the bottom edge of the plate was present at the time Deputy Benge stopped Defendants' vehicle.

Although Deputy Benge may very well have been mistaken about the presence of duct tape along the bottom edge of the plate, the presence or absence of duct tape is not the issue here. Deputy Benge did not state that he pulled the vehicle over because the duct tape was or was not present along the bottom edge of the plate. Instead, he pulled the vehicle over because the license plate was not securely affixed to the rear of the vehicle causing the plate to flap as it drove down the road which, in turn, caused the numbers on the plate to be obscured. The Court does not find that Deputy Benge's mistaken belief about the duct tape undermines his credibility with respect to his testimony about the visibility of the numbers on the plate. Likewise, the pictures, which show the license plate flat along the rear of the vehicle, are not inconsistent with Deputy Benge's testimony. First, the pictures were taken while the vehicle was stationary. Deputy Benge testified that when the subject vehicle was stationary the license plate was in a similar state. (*See id.* at 31:14-16 (the plate "went back" when it started slowing down)). Furthermore, nothing in the pictures establishes what the condition of the plate would be if the vehicle was driving at highway speeds. The Court simply does not share in Defendants' speculation that "if the tag was taped as shown in the photos it would not have been flapping." (D.E. 34 at 7). Therefore, the Court does not find that the photographs call into question or contradict Deputy Benge's testimony.

### C. Conclusion

Because Deputy Benge had probable cause to believe that Defendants had committed a violation of KRS 186.170, the stop of the vehicle Defendants were driving was permissible under the Fourth Amendment.

### III. RECOMMENDATION

For these reasons discussed herein, the Court **RECOMMENDS** that the District Court **DENY** Defendants' motions to suppress (D.E. 23, 24).

The Court directs the parties to 28 U.S.C. § 636(b)(1) for appeal rights concerning this recommendation, issued under subsection (B) of that statute. As defined by § 636(b)(1) and Federal Rule of Criminal Procedure 59(b), within fourteen days after being served with a copy of this recommended decision, any party may serve and file written objections to any or all portions for de novo consideration by the District Court. The parties should consult the aforementioned statute and rule for specific appeal rights and mechanics. Failure to object in accordance with Rule 59(b) waives a party's right to review.

This the 13th day of June, 2011.

Signed By:

*Hanly A. Ingram*

United States Magistrate Judge